UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ratner & Prestia, P.C. | : | |
|           Plaintiff, | : | |
| v. | : | No. _____ |
| Stolmár & Partner Patentanwälte PartG mbB | : | |
| and | : | |
| Matthias Stolmár | : | |
| and | : | |
| Hansjörg Rembold | : | |
|           Defendants. | : | |

## COMPLAINT

Plaintiff Ratner & Prestia, P.C. ("RatnerPrestia"), for its Complaint against Defendants Stolmár & Partner Patentanwälte PartG mbB ("Stolmár & Partner"), Matthias Stolmár ("Stolmár"), and Hansjörg Rembold ("Rembold") (collectively "Defendants"), alleges the following:

## NATURE OF THE ACTION

1. This is an action seeking declaratory and injunctive relief and damages arising from the intentional and deliberate efforts of the Defendants to interfere with and disrupt the business of RatnerPrestia and particularly its Munich office through acts of tortious interference with existing and prospective business and economic relationships, fraud, breach of contract, unfair competition, and civil conspiracy to commit the aforementioned acts. RatnerPrestia seeks a declaratory judgment that Alexander Son, a shareholder of RatnerPrestia, is not in any way affiliated with Stolmár & Partner or any of the Defendants. RatnerPrestia also seeks to enjoin Defendants from asserting that employees of RatnerPrestia are in any way still affiliated with Stolmár & Partner or

any of the Defendants, and from displaying the likeness of and information about RatnerPrestia employees on its website, letterhead, or any other place, to hold RatnerPrestia employees out as employees of, or otherwise affiliated with, Stolmár & Partner and/or the Defendants. RatnerPrestia also seeks monetary damages (both actual and punitive) for the significant harm caused by Defendants' unlawful, unethical, intentional and deliberate acts. Damages are sought against Stolmár & Partner, as well as both Stolmár and Rembold individually, and in particular Rembold, for his breach of several agreements.

## THE PARTIES

2. RatnerPrestia is a Pennsylvania Professional Corporation having a principal place of business at 1235 Westlakes Drive, Suite 301, Berwyn, PA 19312.

3. Upon information and belief, Stolmár & Partner, is a German partnership with a place of business located at Blumenstrasse 17, 80331 Munich, Germany.

4. Upon information and belief, Defendant Matthias Stolmár is a partner at Stolmár & Partner and a German citizen working at Blumenstrasse 17, 80331 Munich, Germany.

5. Upon information and belief, Defendant Hansjörg Rembold is a partner at Stolmár & Partner and a German citizen, with a home address at Possenhofener Straße 40, 82319 Starnberg, Germany, and a working address at Blumenstrasse 17, 80331 Munich, Germany.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action by virtue of: (1) diversity of citizenship pursuant to 28 U.S.C. § 1332, as the Defendants are citizens of a foreign nation, Plaintiff RatnerPrestia is a Pennsylvania Professional Corporation and the matter in controversy exceeds the sum or value of $75,000; (2) the presence of one or more questions arising under federal law pursuant to 28 U.S.C. § 1331 as the matter involves unfair competition under the Lanham Act (15 U.S.C. § 1051 et. seq.); (3) declaratory judgment jurisdiction pursuant to 28 U.S.C. § 2201 and (4) supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367 (a) and 1338.

7. This Court has personal jurisdiction over Defendants because Defendants regularly conduct business in this judicial district, substantially communicated and coordinated with

RatnerPrestia in this judicial district relating to the opening of RatnerPrestia's Munich Office, and/or because Defendants have caused tortious injury to RatnerPrestia in this judicial district.

8. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391 because, *inter alia*, each of the Defendants is subject to personal jurisdiction in this District; and this action arises from transactions and occurrences which occurred within this District, including the formation of the parties' business relationship.

## FACTUAL BACKGROUND

9. RatnerPrestia is an Intellectual Property law firm established in 1980 by Allan Ratner and Paul Prestia as a single office in the United States that has now grown into an international law firm with four offices, approximately 40 lawyers/patent agents and close to 100 employees.

10. RatnerPrestia has a well-earned reputation for excellence both nationally and internationally and its attorneys have been recognized by numerous professional organizations. For example, RatnerPrestia's attorneys have been recognized by their peers by attaining leadership positions in numerous local, national and international Intellectual Property organizations.

11. RatnerPrestia has built a client base that includes clients from around the world, including many major companies based and located in Germany.

12. Germany, in particular, is an important country in securing patent protection, as it is one of the homes of the European Patent Office, a sister organization to the United States Patent and Trademark Office and the most common starting point for patent protection in the 28 countries in the European Union.

13. RatnerPrestia's clients look to RatnerPrestia to secure Intellectual Property rights for them, not just in the United States, but also in other countries. To meet its clients' needs relating to international Intellectual Property rights, RatnerPrestia has established trusted and valuable business relationships with other Intellectual Property law firms around the world.

14. One of the several German Intellectual Property law firms with which RatnerPrestia has had a business relationship for many years is Stolmár & Partner and its named partner, Stolmár.

15. For many years, RatnerPrestia & Stolmár & Partner regularly transacted business together, including (a) communicating with each other via email, telephone and written correspondence, (b) billing and paying each other for each firm's respective work, (c) meeting with each other at professional organization meetings and (d) participating in professional programs together, including programs held at RatnerPrestia's Pennsylvania office.

16. Several years ago, RatnerPrestia decided that having a German office would benefit its clients in the U.S. and around the world. RatnerPrestia understood that such a venture would require not only a significant financial investment, but also a strategic partnership with individuals skilled in the practice of German Intellectual Property law.

**Defendants' Unlawful Conduct**

17. On or about March 29, 2014, during a dinner with Stolmár in Munich, RatnerPrestia's CEO Jonathan H. Spadt and COO Barbara A. Foley raised the idea to Stolmár about the possibility of his firm joining RatnerPrestia to become its German office.

18. Stolmár expressed a clear interest in moving forward with joining RatnerPrestia and confirmed his excitement about such a combination in an email dated April 7, 2014, in which he proposed that the name of the project of joining the firms should be "Zitronenwurzelholz." Stolmár explained that "Zitronenwurzelholz" means citron root timber, which he explained is a rare and strong wood used to make furniture for royalty and thus would last forever. A copy of this email is attached as **Exhibit A**.

19. On or about April 15, 2014, a Mutual Non-Disclosure Agreement ("NDA") was signed between RatnerPrestia and Stolmár & Partner with the explicitly stated purpose of exchanging proprietary information "pertaining to a potential merger/acquisition between the parties." A copy of the NDA is attached as **Exhibit B**.

20. An initial exchange of documents subsequently occurred during the following weeks. On May 5, 2014, Stolmár sent an email including preliminary 2013 financial statements. On or about May 27, 2014, RatnerPrestia sent, via email, a large volume of

4

RatnerPrestia information to Stolmár & Partner, all of which was classified as confidential under the terms of the NDA of April 15, 2014. Stolmár confirmed receipt of that information in a responsive email dated May 28, 2014.

21. On July 11, 2014, Stolmár & Partner's 2012 Tax Declaration was forwarded to RatnerPrestia via email, along with Stolmár's statement that he would "put the other information together so that we can further advance with the Zitronenwurzelholz project."

22. Upon information and belief, Stolmár was aware that RatnerPrestia was investing its time and financial resources to further the joinder in reliance on Stolmár's representations and commitments.

23. On July 21, 2014, Stolmár confirmed that he would arrive in Washington on September 6, 2014, and that Dr. Fritz Wetzel (a partner of Stolmár & Partner at that time who is now a shareholder of RatnerPrestia, based out of its Munich office) would join the meeting.

24. Meetings were held in Washington, D.C. during the week of September 8, 2014 between Mr. Spadt, Ms. Foley, Stolmár, and Dr. Wetzel.

25. Following the meetings spanning the week of September 8, 2014, additional meetings were held in Munich on September 22-25, 2014. During the Munich meetings, Alexander Son, a German attorney who at that time had his own law firm in Munich, but who also had a limited affiliation with Stolmár & Partner, was in attendance at Stolmár's invitation. Mr. Son is now a shareholder of RatnerPrestia, based out of its Munich office.

26. Stolmár was not only aware of, but encouraged, the joinder of Dr. Wetzel, as well as Mr. Son with RatnerPrestia.

27. Sometime prior to September 21, 2014, and without the knowledge of RatnerPrestia, Stolmár made Dr. Hans-Jörg Rembold ("Rembold," a partner of Stolmár & Partner) aware of the joinder plans. Stolmár included Rembold in an email to Mr. Spadt dated September 21, 2014 suggesting that he, Rembold, and Dr. Wetzel meet Mr. Spadt and Ms. Foley for lunch on September 22, 2014.

28. Rembold was not only aware of, but encouraged the joinder of Dr. Wetzel, as well as Mr. Son with RatnerPrestia.

5

29. On September 24, 2014, Mr. Spadt invited Stolmár to join him at the German-American Business Council's annual dinner at the Residence of the German Ambassador to the United States. On October 7, 2014, Stolmár confirmed his attendance and confirmed another meeting in Washington, D.C., coinciding with that event.

30. On or about October 7, 2014, and with the understanding that each of the three Stolmár & Partner partners was interested in moving forward with the joinder and had agreed to the confidentiality of the plans, RatnerPrestia sent a copy of its proposed Project Management Plan for the joinder between the two firms to Stolmár, Rembold and Dr. Wetzel.

31. Upon information and belief, Rembold was aware that RatnerPrestia was investing its time and financial resources to further the joinder in reliance on Rembold's representations and commitments.

32. In or about, November 2014, with no apparent reason, Stolmár started to delay and prevent the dissemination of key information about the joinder of the firms (including financial information) to RatnerPrestia. Many documents that had been promised to RatnerPrestia for months were never sent, although Stolmár continued to assert that they would be sent. Stolmár continued to state that he was moving forward with the joinder.

33. Upon information and belief, Stolmár was aware that RatnerPrestia relied on Stolmár's representations and commitments, as well as those of Rembold and Dr. Wetzel, in furtherance of RatnerPrestia's plans to open an office in Munich, Germany.

34. On November 12, 2014, prior to the November meetings in Washington, D.C., RatnerPrestia received an email from Stolmár & Partner's accounting person, Ms. Annika Schuell, noting that she did not have permission from Stolmár to disclose certain documents that Stolmár had previously promised to supply to RatnerPrestia. That same day, Stolmár emailed Mr. Spadt and informed him that "Fritz [Wetzel] is in charge for the preparation of the documents."

35. The information sought from Stolmár & Partner through Ms. Schuell was information which had been requested by RatnerPrestia, and which Stolmár had agreed to supply, as early as May, 2014.

36. The next round of talks occurred in Washington, D.C. during November 18-20, 2014.

37. Based upon Stolmár's commitment to join Stolmár & Partner with RatnerPrestia, Mr. Spadt invited Stolmár to participate in a high level summit it was hosting in May, 2015, in Washington, D.C., relating to the proposed European Unified Patent Court and the Transatlantic Trade and Investment Partnership (TTIP) agreement between the United States and the European Union.

38. Upon information and belief, in early 2015, Stolmár had been secretly negotiating with a major law firm in Munich, Bardehle Pagenberg, while at the same time deceptively advising RatnerPrestia that Stolmár & Partner intended to join RatnerPrestia to become its Munich Office.

39. Upon information and belief, Stolmár had kept this information relating to his plans/negotiations with Bardehle Pagenberg secret from RatnerPrestia while telling RatnerPrestia that Stolmár & Partner was joining with RatnerPrestia.

40. Stolmár attended the May, 2015 RatnerPrestia Summit but indicated for the first time that he was not fully committed to the joinder during a meeting with Mr. Spadt and Ms. Foley.

41. Stolmár's partners (Rembold and Dr. Wetzel), along with Mr. Son, advised Mr. Spadt that they were still interested in continuing the joinder talks with RatnerPrestia and continued to do so.

42. Rembold continued to maintain his representations and commitments that he agreed to in the MOU and, upon information and belief, was aware that RatnerPrestia was relying and acting on Rembold's representations and commitments.

43. Even after Stolmár indicated he was not fully committed to the joinder, Rembold continued to encourage the joinder of Dr. Wetzel, as well as Mr. Son with RatnerPrestia.

44. In or about late June, 2015, a Memorandum of Understanding ("MOU") was executed by Son, Wetzel and Rembold which recited, in part, "Dr. Fritz Wetzel and Dr. HansJörg Rembold will end their partnership with the firm Stolmár & Partner . . . ." A redacted copy of the MOU is attached as **Exhibit C**.

45. On or about June 30, 2015, Dr. Wetzel gave notice to Stolmár that he was leaving Stolmár & Partner effective December 31, 2015.

46. On or about July 31, 2015, Rembold, Dr. Wetzel and Mr. Son executed agreement letters for employment with RatnerPrestia. In sending back his signed letter, Rembold stated, "I believe we shall have a great time with many exciting projects!"

47. At all relevant times, Rembold was aware that RatnerPrestia was planning to open its new Munich office on January 1, 2016.

48. At all relevant times, Rembold encouraged RatnerPrestia regarding the joinder of Rembold, Dr. Wetzel and Mr. Son with RatnerPrestia and its Munich office on January 1, 2016.

49. On or about July 31, 2015, Rembold again committed to Mr. Spadt and Ms. Foley that he would advise Stolmár on September 1, 2015 that he was leaving Stolmár & Partner to join RatnerPrestia.

50. Upon information and belief, Rembold knew that RatnerPrestia was relying on his written and verbal commitments in moving ahead with its plans for a Munich office.

51. Upon information and belief, Rembold was aware of the time and expense that RatnerPrestia had incurred and would continue to incur in executing its plan for a Munich office and its reliance on Rembold's commitments.

52. Upon information and belief, in conspiracy with Stolmár, Rembold fraudulently signed the employment letter, lied to Mr. Spadt and Ms. Foley in order to provide Stolmár with information concerning the activities of RatnerPrestia, Mr. Wetzel and Mr. Son.

53. Upon information and belief, Rembold never intended to join RatnerPrestia, despite his signing of the employment letter and his verbal commitments to Mr. Spadt and Ms. Foley.

54. Upon information and belief, Rembold also lied to his partner at that time, Dr. Wetzel, as well as his colleague, Mr. Son, in order to further the conspiracy with Stolmár and obtain information to provide to Stolmár. Upon information and belief, Rembold disclosed confidential information to Stolmár in violation of the NDA, after Rembold knew that Stolmár was no longer interested in joining RatnerPrestia.

55. On September 1, 2015, in violation of the signed MOU, the signed employment letter, and his verbal commitments to RatnerPrestia, Rembold informed RatnerPrestia that he was going to stay at Stolmár & Partner.

56. On or about September 2015, Mr. Son gave Stolmár & Partner notice that he would be ending his affiliation with Stolmár & Partner.

57. Both Dr. Wetzel and Mr. Son gave their notice to Stolmár & Partner in accordance with the terms of their respective agreements.

58. Despite Mr. Son's notice of ending his affiliation with Stolmár & Partner, Stolmár & Partner continues to hold out Mr. Son as affiliated with Stolmár & Partner as "Of Counsel" working "in close cooperation with Stolmár & Partner" and displays Mr. Son's name, photograph and contact information on its website:



A copy of this webpage printout is attached as **Exhibit D**.

59. Despite Mr. Son's notice of ending his affiliation with Stolmár & Partner, Stolmár & Partner continues to hold out Mr. Son as affiliated with Stolmár & Partner as "Of Counsel" on

9

Stolmár & Partner letterhead which is sent to present and prospective clients of Stolmár & Partner. A copy of a redacted letter from Stolmár is attached as **Exhibit E**.

60. Since Mr. Son ended his relationship with Stolmár & Partner effective December 31, 2015, the continuing display of Mr. Son's name, likeness, and contact information on the Stolmár & Partner website and Stolmár & Partner letterhead has been without the authorization of Mr. Son and contrary to his express instructions not to do so and remove it.

61. On at least two occasions, Mr. Son has, in writing, notified Stolmár & Partner and Stolmár that they are not permitted to use Mr. Son's likeness or represent that he is affiliated with Stolmár & Partner or Stolmár.

62. Upon information and belief, the use of Mr. Son's likeness and representation of his affiliation with Stolmár & Partner has been done with the full knowledge and direction of Stolmár and Rembold.

63. Upon information and belief, the use of Mr. Son's likeness and representation of his continued affiliation with Stolmár & Partner has been done to destroy Mr. Son's business relationships with his clients and prospective clients, as well as deceive those clients and prospective clients into believing that Mr. Son is still affiliated with Stolmár & Partner and not a shareholder of RatnerPrestia.

64. Upon information and belief, the use of Mr. Son's likeness and representation of his continued affiliation with Stolmár & Partner has been done to destroy RatnerPrestia's business relationships with its current clients and prospective clients, as well as deceive those clients and prospective clients into believing that Mr. Son is still affiliated with Stolmár & Partner and not a shareholder of RatnerPrestia.

65. Upon information and belief, Stolmár & Partner intended to profit and has profited from the unauthorized use of Mr. Son's likeness and unauthorized representation of his continued affiliation with Stolmár & Partner.

66. Upon information and belief, Stolmár and Rembold traveled to Korea and misled clients and business contacts of Mr. Son regarding Mr. Son's relationship with Stolmár & Partner in order to deceive those clients and business contacts into staying with or working with Stolmár & Partner and not RatnerPrestia with whom Mr. Son is now a Shareholder.

67. Upon information and belief, Stolmár and Rembold traveled to Korea and misled clients and business contacts of Mr. Son regarding Mr. Son's relationship with RatnerPrestia in order to deceive those clients and business contacts into staying with or working with Stolmár & Partner and not RatnerPrestia with whom Mr. Son is now a Shareholder.

## COUNT I

### Tortious Interference with Existing and Prospective Business and Economic Relationships
### Against All Defendants

68. RatnerPrestia restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

69. At all times material and relevant herein, Defendants had knowledge that RatnerPrestia intended to open a law firm office in Munich, Germany.

70. Notwithstanding this knowledge, Defendants wrongfully and intentionally tortiously interfered with both present and prospective business relationships of RatnerPrestia and its shareholders, including those relating to RatnerPrestia' Munich office.

71. There was a reasonable probability that clients of Stolmár & Partner, including clients of Mr. Son would have entered into business relationships with RatnerPrestia.

72. Upon information and belief, Defendants wrongfully and intentionally prevented future business relationships from developing between certain clients and potential clients of Stolmár & Partner, including clients and potential clients of Mr. Son and RatnerPrestia.

73. As a consequence of the foregoing, RatnerPrestia has suffered and will continue to suffer irreparable harm and loss and damages in an amount not less than $75,000, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT II

### Breach of Contract
### Against Rembold

74. RatnerPrestia restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

75. Rembold has materially breached his signed MOU, his written agreement in the form of the employment letter, and his verbal commitments to RatnerPrestia.

76. Upon information and belief, Rembold breached the above provisions of the Non-Disclosure Agreement by divulging, disclosing, and/or communicating to a third party or third parties—including but not limited to Stolmár —RatnerPrestia's financial information, business affairs, future plans and other vital information items.

77. As a consequence of the foregoing, RatnerPrestia has suffered and will continue to suffer irreparable harm and loss and damages in an amount not less than $75,000, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT III

### Fraud
### Against All Defendants

78. RatnerPrestia restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

79. As set forth above, Defendants were aware of RatnerPrestia's plans to launch an office in Munich Germany.

80. As set forth above, Defendants made misrepresentations to RatnerPrestia, which included:

   a. representations that Defendants intended to join and become Shareholders of RatnerPrestia in furtherance of RatnerPrestia's proposed Munich office;

   b. explicit commitments by Rembold that he would become a shareholder of RatnerPrestia; and

   c. representations that there would be no impediments from Defendants in their clients being transferred to RatnerPrestia.

81. Defendants made the misrepresentations identified herein with the intent that RatnerPrestia would rely upon those misrepresentations in moving forward with its plans for a Munich, Germany office.

12

82. The statements of Defendants Stolmár and Rembold were false in that at the time that Defendants made the misrepresentations identified herein, Defendants never intended to join RatnerPrestia.

83. At the time that Defendants made the misrepresentations identified herein, Defendants intended instead to merge and/or join with one or more other law firms, or remain as an independent law firm.

84. The statements and commitments made by Stolmár and Rembold were material.

85. Defendants' conduct was wanton and willful.

86. Stolmár and Rembold planned to benefit from this fraud by depriving RatnerPrestia of business.

87. The willful and intentional conduct of Stolmár and Rembold is so outrageous and extreme in their deceit and fraud against RatnerPrestia and its shareholders as to warrant an award of punitive damages against them.

88. As a consequence of the foregoing, RatnerPrestia has suffered and will continue to suffer irreparable harm and loss and damages in an amount not less than $75,000, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT IV

### Unfair Competition
### Against All Defendants

89. RatnerPrestia restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

90. Defendants have represented and continue to represent their affiliation with Mr. Son, knowing that Mr. Son: (a) has not authorized such representations; and (b) is instead affiliated with RatnerPrestia.

91. Defendants have displayed and continue to display Mr. Son's photograph and information on the Stolmár & Partner website, knowing that Mr. Son is not affiliated with Stolmár & Partner and that Mr. Son is a shareholder of RatnerPrestia.

92. Defendants' deceptive conduct was and is likely to cause confusion or misunderstanding as to Mr. Son's affiliation.

93. As a result of the conduct set forth above, Defendants have engaged in acts of unfair competition.

94. Defendants' acts have caused irreparable harm and injury to RatnerPrestia and it is likely that Defendants will continue to do so unless stopped by the Court.

95. As a consequence of the foregoing, RatnerPrestia has suffered and will continue to suffer irreparable harm and loss and damages in an amount not less than $75,000, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT V

### Unjust Enrichment
### Against All Defendants

96. RatnerPrestia restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

97. Defendants have acted improperly and wrongfully and have used, and are continuing to use, the likeness of Mr. Son and represent an affiliation with Mr. Son in order to divert business from RatnerPrestia to Stolmár & Partner and/or Stolmár and/or Rembold.

98. As a result of Defendants' improper and wrongful conduct, and use of RatnerPrestia's assets, Defendants have received revenues from clients that were rightfully RatnerPrestia's and will continue to gain revenue from these unlawfully misappropriated clients in the future.

99. As a consequence of the foregoing, RatnerPrestia has suffered and will continue to suffer irreparable harm and loss and damages in an amount not less than $75,000, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT VI

### Civil Conspiracy
### Against All Defendants

100. RatnerPrestia restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

101. Upon information and belief, while already having decided not to join RatnerPrestia, Defendants conspired to deceive RatnerPrestia into believing that at least Rembold was joining RatnerPrestia in order to obtain information about RatnerPrestia's plans with Dr. Wetzel and Mr. Son.

102. Upon information and belief, Defendants conspired to prevent RatnerPrestia from forming business relationships and/or entering into contracts with Mr. Son's former and prospective clients.

103. Defendants planned to benefit from this conspiracy by depriving RatnerPrestia of business and diverting this business to Defendants.

104. The willful and intentional conduct of Defendants is so outrageous and extreme in their deceit and conspiracy against RatnerPrestia and its shareholders as to warrant an award of punitive damages against them.

105. As a consequence of the foregoing, RatnerPrestia has suffered and will continue to suffer irreparable harm and loss and damages in an amount not less than $75,000, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT VII

### Declaratory Judgment that Mr. Son is not affiliated with Defendants
### Against All Defendants

106. RatnerPrestia restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

107. Mr. Son is not affiliated with Defendants in any way, and has not authorized Defendants' use of Mr. Son's likeness.

108. Defendants have acted improperly and wrongfully and have used, and are continuing to use, the likeness of Mr. Son and represent an affiliation with Mr. Son in order to divert business from RatnerPrestia and otherwise inflict harm upon RatnerPrestia.

109. As such, an actual, live, and justiciable controversy exists between RatnerPrestia and Defendants.

110. RatnerPrestia, therefore, seeks a declaratory judgment that Son is not affiliated with Defendants.

## PRAYER FOR RELIEF

In view of the foregoing, RatnerPrestia asks that this Court grant relief as follows:

A. Entering judgment for RatnerPrestia on all Counts of the Complaint;

B. Preliminary and permanent mandatory injunctive relief enjoining Stolmár and Rembold from violating or breaching in any manner the provisions of the Non-Disclosure Agreement;

C. Preliminary and permanent mandatory injunctive relief enjoining Defendants from holding out Mr. Son or any RatnerPrestia employees as affiliated with Defendants;

D. A declaratory judgment pursuant to 28 U.S.C. § 2201 that Mr. Son is not affiliated with any of the Defendants;

E. Awarding RatnerPrestia compensatory and punitive damages;

F. Awarding RatnerPrestia attorney fees, prejudgment interest, and costs; and

G. Awarding RatnerPrestia such other relief as this Court may deem just and appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

RatnerPrestia hereby demands a trial by jury of all issues in this action so triable.

Respectfully submitted,

Dated: 3/29/16

Benjamin E. Leace (Pa. No. 54281)

RatnerPrestia
1235 Westlakes Drive
Suite 301
Berwyn, PA 19312
(610) 407-0700
(610) 407-0701
beleace@ratnerprestia.com

ATTORNEYS FOR PLAINTIFF